McDougald *et al. vs.* Dougherty.

No. 67.—ANN E. McDOUGALD *et al.* plaintiffs in error, *vs.* WM. DOUGHERTY, defendant in error.

### THE SAME *vs.* THE SAME.

[1.] A bill filed by a creditor to compel the execution of a trust, is not a bill of *quia timet,* nor does it partake of the nature of such a proceeding.

[2.] Where a *trust* has been created for the benefit of creditors, it is the right of any one of the creditors to sue in behalf of himself and the rest, to enforce the execution of the trust for the benefit of all who are interested.

[3.] Proceedings before a Master in Chancery, are in the nature of an informal bill in Equity; and supervisory Courts will not interfere to correct their errors, unless substantial defects exist.                      ⟍

[4.] If any great right or public policy has been violated by the Master, relief will be afforded; otherwise not.

[5.] This *extra judicial* mode of investigation is of great advantage, by relieving a Court of Chancery from the performance of burthensome duties, and enabling it to exercise its regular jurisdiction in a much more beneficial manner.

[6.] A tender, to be a bar, should be made by the *debtor* or his legal representative, and not by a *stranger.*          ˏ

[7.] Notwithstanding a bill is filed by a creditor at the instance of himself and all others who may wish to come in, still up to the time of the decree it is a suit only between party and party.

[8.] The plaintiff up to the time of decree, may make any disposition of the case, which he sees fit; and the defendant who is the debtor may tender satisfaction and compel him to accept it.

[9 ] When titles to property are disputed before a Court of Chancery, a Jury alone is competent to determine the real truth of the fact.

[10.] Neither the Chancellor himself nor the Master, will undertake to decide upon antagonistic claims to property.

[11.] The duty of a Master in Chancery is mainly to investigate accounts and audit them; and for the purpose of facilitating their inquiries and rendering them more effectual, they are empowered to examine witnesses and even parties to the cause.

[12.] Interrogatories to a party before the Master, are in the nature of interrogatories in a bill of Chancery, and the answers are evidence to the same extent.

[13.] According to the practice in England, and such is the correct practice here, a *party* interrogated before a Master in Chancery, has the right to demand that the questions be propounded in writing; otherwise as to

McDougald *et al. vs.* Dougherty.

*witnesses.* The party may waive this privilege and submit to a *viva voce* examination, and it will be good.

[14.] If one general exception is taken to the Master's certificate, approving of interrogatories, and the Court is of the opinion that one only of the interrogatories ought not to have been approved of, the exception will be allowed. But if the exception is, that the Master ought not to have allowed of *any*, then if *one* was proper to be allowed, the general exception fails as to all.

[15.] New parties may be introduced in the record by way of amendment to the bill, even at the hearing; and it is utterly immaterial whether they are made plaintiffs or defendants.

[16.] Material amendments to sworn bills should be verified.

[17.] Every *amendment* is an *indulgence* granted by the Court; and is granted to the mistake of the parties and with a view to save expense.

[18.] When amendments are allowed, it should be upon such terms as not to injure others.

[19.] If the new matter will affect the opposite party prejudicially, it should not have relation back to the time of filing the original bill; but the suit should be considered as pending only from the time of the amendment.

[20.] A party will not be prejudiced by the recitals in a deed, executed under judicial compulsion.

In Equity, in Muscogee Superior Court. Decisions by Judge Iverson, at Chambers, 1852. Consolidated by consent.

Wm. Dougherty filed a bill in behalf of himself and such other creditors of Daniel McDougald as might come in and be made parties, against Seaborn Jones, Alexander McDougald, Duncan McDougald, and Ann E. McDougald, charging that on 25th August, 1846, Daniel McDougald made an assignment of property amounting to $250,000, or some such sum, consisting of lands, negroes, choses in action, &c. to Seaborn Jones and Robert B. Alexander, (since deceased,) *in trust* for the benefit of all his creditors who should come in within six months and file a full release with the said trustees; that Jones and Alexander, regardless of their duties as trustees, had wholly failed to execute the trust, but on the contrary permitted McDougald, until his death, (in September, 1849,) to use and control the property; to sell the same at pleasure and to receive the rents, issues and profits thereof; keeping also the title deeds, no de-

mand for them or the property being made by the trustees ; that since the death of McDougald, the trustees have been equally negligent, permitting the property to go into the possession of Ann E., Duncan, and Alexander McDougald, who have received the rents, issues, &c. with full knowledge of the trust; that Jones is much involved in his private matters by judgments and mortgages ; that he claims title to a portion of the property adverse to the interest of the creditors, and claims himself to be a creditor to a large amount ; that the trust property was much exposed, unprotected, wasted and scattered, and required the immediate interference of the Court.

The prayer of the bill was, for the appointment of a receiver and an account, &c.

On the 9th day of April, the Honorable *Alfred Iverson*, Judge of the Superior Court of the Chattahoochee Circuit, made an order at his chambers in said case, wherein, after making certain recitals, he ordered and directed, amongst other things, that A. S. Rutherford be appointed a receiver of the property and other things, mentioned in said alleged deed, under certain conditions in said order prescribed, and that the said Seaborn Jones, Ann E. McDougald, Alexander McDougald and Duncan McDougald, each should appear before him, the said Judge, on the second Monday of May, 1851, to discover and to deliver over on oath to said receiver, all the property, money, notes, executions mentioned in the said assignment, in their possession or control, or that of either of them, and the title deeds thereto, and all books, papers, memoranda, or evidences appertaining or referring thereto, or connected therewith, and also all the rents, issues, profits, proceeds, income, and receipts thereof, that had come into their possession, knowledge or control, at any time since the execution of said alleged deed; and further, that the appointment therein made of the said receiver, was not in any manner to suspend or interfere with the duties, rights and responsibilities of said trustee, until the said receiver should be duly qualified, and said property delivered up to him as contemplated by the then order.

The plaintiff afterwards, to wit, on the 20th day of Novem-

McDougald *et al. vs.* Dougherty.

ber, 1851, obtained from the Judge a supplemental order in said case, by which the Judge, after making certain recitals, ordered amongst other things, that Seaborn Jones, Ann E. McDougald, Duncan McDougald, and Alexander McDougald aforesaid, should each appear before him on Saturday, the 29th day of that same month of November, to discover on oath, deliver up, and pay over to said receiver, and execute proper conveyances for the same, the property, notes, *fi. fas.* and effects mentioned and specified in the deed of assignment made by Daniel McDougald to said Jones and Robert B. Alexander, and set forth in the bill of complainant, which may be in their knowledge, custody or control, with all papers, memoranda or title deeds, or evidences of title to, or connected with the same, and also, all the rents, issues, profits, proceeds and increase accruing or arising from said property, that might have been received by either of them, or by any other person for them, or subject to their control, since the execution of said assignment, and that defendants should be served with a copy of that and the previous order aforesaid, at least three days before the said 29th day of that said month of November, 1851.

The hearing of the answers to these orders was postponed from time to time, to suit the convenience of both parties.

On the first Saturday in January, the defendants appeared before his Honor, and it appearing that the said Ann E. was still sick and unable to attend to business, and also, that there was not then sufficient time for a full hearing on said matters, to be heard on that day, the hearing was further postponed by the Judge, as to the defendants Ann E., Duncan and Seaborn, viz: until the 12th day of January, 1852, but the said Alexander then and there submitted to an oral examination touching said orders, by said plaintiff, and was, after such examination, discharged by the Court from such orders.

On the 12th day of January, 1852, Duncan McDougald appeared before his Honor and submitted in writing his answer and showing to the orders aforesaid. As to Jones, he was ordered to make some further answers in some matters of no great consequence in said case, by a certain day, viz: the 3d day of February,

1852, and also then to execute a deed to the receiver for the trust property.

On the 6th day of February, 1852, the said Duncan and Alexander filed their joint answers to the bill of complaint of said Dougherty.

Immediately before the filing of the answers of the said Alexander and Duncan to said bill, the said Ann E. came in open Court by her counsel, Henry L. Benning, and tendered to the plaintiff, thirteen hundred dollars in payment of his judgment and *fi. fa.* mentioned in his said bill, and all costs of every kind, and requested the plaintiff to accept the same, which he then and there refused to do; and thereupon, and on the filing of said answer, the defendants requested the Judge to discharge said answer, and the Judge refused to do it, and thereupon defendants excepted.

The following is an abstract of the answers of defendants to the bill and orders.

Seaborn Jones, in his answer to the bill, stated, that about 24th August, 1846, at the request of Daniel McDougald, defendant signed his name to a deed of trust for the benefit of McDougald's creditors, consenting to act as trustee therein.   McDougald then took the deed and carried it away, and defendant has never seen it since.   McDougald did not deliver the deed to defendant, nor did defendant read it over, nor did any witness attest his signature, nor did he see Alexander (the other trustee) sign it; that McDougald never delivered to him any of the property contained in the deed, but remained all the while in the possession of the same; nor did any creditor ever signify to defendant, his assent to, or acceptance of the provisions of the deed, nor did any creditor file his release as provided in the deed, within the six months specified by the deed.   Defendant consequently never made any demand of McDougald for the property, *choses in action, &c.* conveyed by the deed; that after the death of McDougald, defendant and Alexander determined to attempt the execution of the trust, but after diligent search, could not discover the deed, and from information, concluded that the same had been destroyed by McDougald; that after the death of Al-

McDougald *et al. vs.* Dougherty.

exander, defendant determined to attempt the execution of the trust, and advertised for sale the land lying in Alabama; that finding that many of the lots were claimed by others, he applied to the brothers of McDougald for the title papers, &c. ; that subsequently, a small trunk and key had been delivered to him, but this bill having been filed, he had not examined the contents of the trunk; which trunk and papers are all the effects of McDougald in his hands; that hearing that an administrator appointed in Alabama, was proceeding to sell some of the land, he had filed a bill as trustee enjoining the sale.   He denies making any agreement or arrangement with McDougald during his life, or the defendant since his death, giving control of the property, he never having had any possession or control of the same.   He has heard, and believes, that McDougald did sell a · part of the property, and collected some of the notes, and paid off with the proceeds a portion of his debts.   Defendant denied that he was insolvent, and explained the fact of the mortgage and judgments remaining open against him.

The joint answer of *Duncan and Alexander McDougald* to the bill denied, that in their belief, any such deed of assignment had ever been made.   They believe that such a paper was drawn and signed, but that it never was delivered or intended to be, but was retained by Daniel McDougald, and destroyed by him; that he never parted with the possession or control of his property, but exercised the same control down to his death, the creditors acquiescing therein—no creditor having at any time notified the said trustees of their acceptance of the provisions of the deed. The answer stated various acts of the complainant's assignor (he being assignee of a *fi. fa. vs. McDougald*) and other creditors, showing that they were not disposed to accept of the provisions of the deed.   After answering all of the other allegations in the bill defendants stated that Ann E. McDougald had tendered, and was ready at any time to pay the complainant, Wm. Dougherty, the full amount of his *fi. fa.*   To this answer was annexed as an exhibit, an exemplification of the returns of Ann E. McDougald as the administratrix of Daniel McDougald, deceased, which the answer stated was correct.

The answer of Ann E. McDougald to the bill, affirmed the statements in the other answer, as far as the same came within her knowledge or belief. She admitted that as administratrix, there were assets in her hands sufficient to pay the complainant (Dougherty's) debt, and stated that she had tendered the full amount thereof to him, and was ready at any time to pay him, and tendered the same in her answer.

The answer farther stated that a debt on Tomlinson Fort (named in the deed of assignment) was compromised by Daniel McDougald in his lifetime, at about fifty cents in the dollar; that after his death a tract of land belonging to the intestate, was much desired by a purchaser who desired title immediately, and was willing to pay $10,000 (a large price) therefor; that upon consultation with legal friends, she was advised that, as the purchaser would not await the slow process of administrator's sale, it would be best for her and the estate of intestate, to have the land levied on under an old *fi. fa.* outstanding, and sold to perfect titles; that the Mechanics' Bank of Augusta, held one of the oldest *fi. fas.* but refused to have it levied unless the bank was first satisfied in full; that anxious not to lose so favorable a sale of the land, she received from I. L. Harris, Esq. $5,000, collected on the Fort debt, and placed it in the hands of her brother, Judge Alexander, to pay up the debt to the Mechanics' Bank, and procure the use of the *fi. fa.* which was accordingly done. The sale of the land, however, was arrested by complainant, to the great injury of the estate, in the opinion of respondent.

In answer to the order of 9th April, Seaborn Jones reiterated the statements made in his answer.

Duncan McDougald, in answer to these orders, stated what portions of the property named in the trust deed were in his possession, and stated the sources of his title thereto, denying that any portion thereof belonged to Daniel McDougald, or that any (except one negro) had been purchased from him since the date of the trust deed.

Upon the coming in of these several answers, the defendants, Jones, Alexander and Duncan, insisted that these answers were

McDougald *et al. vs.* Dougherty.

sufficient to prevent the execution of the said orders. The Court held otherwise, and defendants excepted.

The plaintiff then proposed to propound written interrogatories to defendants, Jones and Duncan McDougald, in reference to certain matters contained in the orders. To which defendants objected, and being allowed by the Court, defendants excepted.

And thereupon the complainant propounded the following interrogatories to the said Duncan, viz:

To Duncan McDougald:

1st. When, and of whom did you purchase the lots E. 23, 17, 30, N. 27, 17, 30, N. 28, 17, 30, N. 26, 17, 30, and fraction 24, 17, 30. Did you purchase them all at the same time, and in the same purchase, and of the same person, and what did you agree to give for the same?

2d. How, and in what manner was the purchase money paid, in money, notes, other property, or what, to whom paid, and when paid?

3d. What sort of a conveyance or writing was executed to you for said land at the time of purchase, or at the time of payment of the purchase money, or any time since, who wrote it, and who were the witnesses?

4th. Did you ever have in your possession or see the patents of said land, and to whom were they issued, and when issued, and where are they? Did you ever have your title papers to said land recorded, if so, in what office? Have you established them or made any effort to do so?

5th. Who occupied and owned said land before you went on the same?

6th. How long have you resided in Georgia, and in what County, before you moved on said land, and who owned the place you lived on before you moved to the land above spoken of, and who sold it? How many negroes were on the place in Harris or Muscogee County, from which you moved to the land in question, and to whom did they belong? How many negroes were on the land of Daniel McDougald, when you came to reside there from North Carolina? How many mules or horses,

cows, hogs, wagons, and carts, were on the place or plantation of Daniel McDougald, which you left when you moved on the said land in Alabama, and what became of the negroes, mules, stock, plantation tools, &c. ? When you left did they remain there, or were they removed or taken off about the time you left, and where were they removed to ?

7th. How many negroes did you own and bring with you from North Carolina; name them and their increase ? How many of the negroes that were on the place or plantation of Daniel McDougald in Harris or Muscogee County, when you came to reside there, and about the time you left for Alabama, which are now in your possession, who superintended and directed said plantation in Alabama after you moved to the Watson place, and up to the time of the death of Daniel McDougald ? Was it not under Daniel McDougald's management and direction, principally ? Who sold the cotton made on the place, from its settlement up to the death of Daniel McDougald ?

8th. When and of whom did you purchase Judy, Fanny, Nancy, Eliza, Betty, Big Caroline and her child, Emma and Tom, Charles or Dillingham, Peter or Pete ? State the time of the purchase of each one, the price paid, and in what paid, and what evidence of title, or what conveyance was executed by vendor to you ? What the value of the annual hire of said negroes since the 24th September, 1846 ?

9th. What did you agree to give for the rent of the wharf property for the year 1850, 1851, and 1852, and at what time was the rent for each year due, and how much of the rent of each year have you paid, and to whom paid, and how much is yet due, and to whom due ? Have you not settled with each member of the company or proprietors of the wharf, for his respective and several share or interest in the same ?

10th. When, in what year did you for the first time, give in and pay taxes on the said tract of land referred to in the preceding interrogatory ?

11th. What is the annual value of the rent of said tract of land for the years 1849, 1850, 1851, and 1852? How much cleared land on the tract those years, and what quality of land ?

12th. What title deeds were those of which you speak in your written answer to the order in this case, by whom executed, to whom and when made, on what consideration, and who paid it?

13th. Did not Daniel McDougald mortgage said land to one James Holford some years since, and state when said mortgage was executed, and state whether you ever made and communicated any objection to said Holford or his counsel, and did you not know who his counsel was to the execution of said mortgage, and was not the same recorded in Russell County, Alabama?

Defendant's solicitors demurred to or objected to the defendant, Duncan McDougald's answering any or either of said interrogatories, on the following grounds, to wit:

1st. Because the land near Girard, Alabama, being stated in the deed to be in the possession of Duncan McDougald, the law presumes it to be adverse to Daniel McDougald, and therefore, the deed from Daniel McDougald is void.

2d. Because the land lies in Alabama, and consequently, beyond the jurisdiction of this Court.

3d. Because the interrogatories go beyond and outside of the stating or charging part of complainant's bill, and therefore, ought not to be allowed.

4th. Because the bill does not allege that the property inquired about in interrogatories, was in fact the property of Daniel McDougald; it merely states it was contained or specified in the deed of assignment.

5th. Because the interrogatories are irrelevant to any matter in issue in the pleadings, or which could be put in issue without their being amended.

7th. Because the interrogatories are merely "fishing."

8th. Because they require a discovery of matters and a production of papers relating to the title and rights of the defendant exclusively, and not to the title of the plaintiff.

9th. Because the interrogatories go far beyond an inquiry concerning an interest only, of Daniel McDougald, deceased, in the land.

10th. Because the interrogatories were contrary to Law and Equity, and the practices and usages of Courts of Equity, and of the Master's office.

The Court overruled the objections, and defendants excepted.

Duncan McDougald filed answers to all of these interrogatories, denying the title of Daniel McDougald to any of the property in his possession—setting forth the time of his purchases —the persons from whom he purchased, and the amounts paid.

In answer to the 9th interrogatory, he stated, that he agreed to pay for rent of the wharf property for the year 1850, $3,745; for the year 1851, $4,300; for the year 1852, $4,556. He has paid of the rent for 1850, $3000; of the rent of 1851, $3,400. The rent for 1852 is not due until November. The above amounts were paid to various corporators of the Columbus Wharf Company, as he believes, according to their respective interests. He rented the property from the Columbus Wharf Company.

The Court, in its final order, required Duncan McDougald to deliver up to the receiver all the negroes and property in his possession, named in the deed of assignment. Also, to attorn to the receiver for one-half of the wharf property, and to pay over to him one-half of the amount of the rent for 1850, 1851, and to give his note for one-half the rent for 1852. To which order, defendants excepted.

The complainant then produced a deed, conveying all the property named in the said deed of assignment, and the object of which was to convey the legal title to the receiver, and moved the Court to order the defendant, Seaborn Jones, to annex his signature thereto.

Jones objected, unless he was permitted to add thereto a protest, " that he did not thereby admit that the alleged deed of trust is, or ever was, valid and binding on him ; or that the recitals in the proffered draft or deed were true." Also, that the deed made him convey to the receiver certain pieces of property to which he claims title adversely to McDougald. The Court overruled the objections and required him to sign the deed then and there presented. To which decision defendant excepted.

McDougald *et al. vs.* Dougherty.

The defendants then moved the Court to pass the following order:

" The defendants having filed their answers denying the execution and delivery of the deed of trust, and alleging that no creditor ever accepted the same or its provisions, and further alleging that Daniel McDougald did, in his lifetime, destroy said deed of trust and revoke the same; and also further alleging that Ann E. McDougald, one of the defendants, and also administratrix of Daniel McDougald, deceased, had tendered to the complainant, William Dougherty, the sum of thirteen hundred dollars, a sum sufficient to discharge and pay off the whole amount, principal, interest and cost, due the said complainant, William Dougherty; moved that the order appointing Adolphus S. Rutherford receiver, be revoked and rescinded, on the following grounds, to wit:

1st. Because there never was any legal execution and delivery of said deed of trust.

2d. Because no creditor of said Daniel McDougald ever accepted the said deed and the provisions of the same.

3d. Because the said Daniel McDougald kept the said deed, and also all the property and titles to the same, and the rights and credits mentioned therein, in his possession, and before his death revoked the said deed by destroying the same.

4th. Because the said Ann E. McDougald has tendered to the said complainant, William Dougherty, the sum of thirteen hundred dollars, a sum sufficient to pay off and discharge the whole of his debt, principal, interest and cost.

5th. Because said receiver was appointed without notice, or the service of said bill upon any other of said defendants than the said Seaborn Jones.

6th. Because the said Adolphus S. Rutherford, the receiver, was, at the time of his appointment as receiver, Deputy Sheriff, and is now acting Sheriff of Muscogee County, and the duties of said offices are, or may be, in conflict with each other.

7th. Because said deed, if duly executed and delivered, is void.

8th. Because there is in the hands of the administratrix, assets ample and sufficient to pay complainant's debt, and that there are other persons liable and bound for the payment of complainant's debt, who are entirely solvent and responsible, and out of whom the same might be collected.

9th. Because said bill, although a creditor's bill, is alone the bill of the complainant, William Dougherty, and when the amount due him is paid or tendered, it is the right of defendants to have the order appointing receiver, revoked and rescinded.

10th. Because the security required of said receiver is insufficient, it being for too small a sum, is not payable to the proper party, is illegal and improper in its condition and is in other respects void.

11th. Because the whole proceedings in the appointment of receiver and the subsequent orders in relation thereto, are irregular, informal and unauthorized by the rules, practice and usages of a Court of Equity, or by Equity or Law.

12th. Because the answer of the defendants fully swears off all of the Equity contained in the bill.

13th. Because the said defendant, Duncan McDougald, has again tendered, and now before the Chancellor, tenders and offers to pay said complainant the entire amount of principal, interest and cost due on his debt and the cost of this suit, to wit, the sum of thirteen hundred dollars.

The said Dougherty then and there opposed the granting of said motion, and thereupon the Judge overruled the same upon all of the grounds. Thereupon said Jones, Duncan and Alexander, then and there excepted to said decision.

On the 14th February, the said Ann Eliza appeared and presented in writing, her answer as above set forth, and asked that the same might be held a sufficient showing against such orders, and that said orders might be discharged as to her ; thereupon the plaintiff objected and the Judge refused to grant said request, but held that such answer was not sufficient, and thereupon the said Ann E. by her counsel excepted.

The plaintiff's solicitors then moved for an order requiring the said Ann E. McDougald to turn over to Adolphus S. Rutherford

as receiver, certain property specified and described in the draft of the order presented, and thereupon counsel for the said Ann E. McDougald objected to that portion of the order requiring her to pay over to the said receiver the money collected of Tomlinson Fort, on the grounds following to wit :

· 1st. Because her answer showed that she did not have the money in her possession.

2d. Because her answer showed that it had been duly administered, having been paid to or on a judgment in favor of the Mechanics' Bank *vs.* her intestate, Daniel McDougald, one of the oldest, if not the oldest judgments against said Daniel.

3d. Because her answer showed that said Daniel, in his lifetime, had agreed with the said Fort to receive a sum much less than the actual amount due, in full discharge of the debt, and thereby revoked said deed of trust *pro tanto* at least.    Counsel for Ann E. McDougald further objected to that portion of order requiring her to turn over or deliver to said receiver, the negroes Hannah and Lucy, because the negroes, Hannah and Lucy, admitted to be in her possession, do not fit the description of the Hannah and Lucy specified and conveyed in deed of trust; Counsel for Ann E. McDougald also further objected to the order so far as it requires her to turn over to receiver the negro man, Reuben, because her answer shows that an action of trover for his recovery is now pending against her, as administratrix of Daniel McDougald.    And counsel for Ann E. also object to said order, because it is informal, irregular, and contrary to rules and practice of Courts of Equity, or of Equity and Law.

The Court overruled all these objections, and counsel for defendants excepted.

Subsequently the complainant, Wm. Dougherty, moved to amend his bill by inserting Ann E. McDougald in her representative capacity, as the administratrix of Daniel McDougald, deceased, as a party defendant to the bill ; and also inserting the names of various other creditors as parties complainant to the bill.    This amendment was not verified by affidavit.

Various objections were made to its allowance, unnecessary to be specified in the view taken of it by the Supreme Court.

The allowance of the amendment was excepted to by defendants.

BENNING, for Ann E. McDougald *et al.*

WM. DOUGHERTY, for complainants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

William Dougherty, in behalf of himself and other creditors of Daniel McDougald, deceased, filed his bill in Equity, in the Superior Court of Muscogee County, against Seaborn Jones, Ann E. McDougald, Alexander McDougald, and Duncan McDougald, returnable to the May Term, 1851, of said Court. The bill alleged, amongst other things, the execution and delivery of the deed of trust, by the said Daniel McDougald in his lifetime, to the said Seaborn Jones and one Robert B. Alexander, for the benefit of his said creditors ; the acceptance thereof by the said trustees, and the subsequent death of Alexander, and prayed for the removal of Jones on account of his misconduct and refusal to perform said trust, the substitution of another trustee in his stead, and the appointment of a receiver in the meantime, to take charge of, preserve and manage, the trust property.

On the 9th of April, 1851, on the hearing of complainant's application, one Adolphus S. Rutherford was, by the order of the Court, appointed receiver, being required before entering on his duties as such, to enter into bond with good security, payable to the Governor of the State, in the sum of ten thousand dollars, for his good conduct.

A motion was made, that the order appointing Adolphus S. Rutherford receiver, be revoked and rescinded, on a great variety of grounds, to wit :   Because there was never any legal execution and delivery of the deed of trust ; that no creditor ever accepted the appointment, and the provisions thereof ; that the

McDougald *et al. vs.* Dougherty.

grantor retained the deed, together with the property and the titles to the same, in his own possession, and previous to his death destroyed the conveyance ; that Mrs. Ann E. McDougald tendered to the complainant, Dougherty, the sum of $1,300, an amount sufficient to pay off and discharge the whole of his debt, principal, interest and cost; that the receiver was appointed without notice or the service of the bill upon any of the defendants, except Jones ; that Rutherford, at the time of his appointment, was Deputy Sheriff, and is now acting Sheriff of Muscogee County ; and that his duties as receiver and Sheriff, are, or may be, in conflict with each other; that the deed of assignment, even if duly executed, is void ; that there is in the hands of the administratrix of Daniel McDougald, assets ample to pay complainant's debt ; and besides, there are other persons liable and bound for the same, who are entirely solvent and responsible, and out of whom the demand might be collected; that the bill, although nominally a creditor's bill, is alone the bill of the complainant Dougherty, and when the amount due him is paid or tendered it is the right of the defendants, to have the order appointing a receiver annulled; that the security required of the receiver, is too small—is not payable to the proper party— is illegal and improper in its condition, and is in other respects void; that the whole proceedings in the appointment of receiver, and the subsequent action in relation thereto, are irregular, informal, and unauthorized by the rules of practice of a Court of Equity, or by Equity or Law ; that because the answer of the defendant fully swears off all the Equity contained in the bill, and because the said defendant, Duncan McDougald, has again tendered, and now before the Chancellor tenders and offers to pay said complainant, the entire amount of principal, interest, and cost due on said debt, and cost of the pending suit, namely, $1,300.

I shall not attempt to examine every point made in this heavy record, which we have scrutinized with great care and attention, but shall endeavor merely to touch upon the main questions which it presents.

[1.] Counsel for the plaintiffs in error have totally misappre-

hended the nature of this bill.   It is not a bill of *quia timet*, nor in the nature of such a proceeding.

[2.]  A creditor has two resources for paying his debts ; either to pursue his debtor personally in his lifetime, or his estate since his death ; or to ask the aid of a Court of Equity, to enforce a *trust* which the debtor had created for his benefit, in common with the other creditors.   He resorts to the latter course, and he is clearly entitled to the assistance of Chancery, to have the *trust* executed.   Hence, in writing out the opinion delivered by the Court in this case, when it was up before, twelve months ago, I stated that the allegation in the bill, that there were other *fi. fas.* which would hinder or delay the creditor, if he attempted to proceed with his execution at Law, to enforce his judgment lien, was not the foundation of his equity ; nor did it give to the Court its jurisdiction.   That it was upon another and altogether different principle, namely : the application of one creditor in behalf of himself and all others, who choose to come in, to enforce the execution of a trust made for their benefit.

Neither is the appointment of a receiver, under such a bill, predicated necessarily, upon the apprehended loss of the debt. It would be sufficient to allege that the trustee appointed refused to perform the trust ; and that of itself, would be ground enough to authorize the Court to appoint a receiver ; and this simple, but true exposition of the nature and object of this proceeding, will strip it at once of many of the difficulties which have been thrown around it.

All the law points adjudicated by this Court, in this case, at this place in July, 1851,  (10 *Geo. Rep.* 273,) stand affirmed, upon the facts which were then before us.   For while we do not profess to be bound by the authority of our decisions, " as firmly as the Pagan deities were supposed to be bound by the decrees of fate," still we must be clearly convinced of their error, before we shall feel it to be our duty to overrule them.

All the issues made by the answers, such as the denial of the delivery of the deed of trust, and its acceptance by the creditors ; the allegation that the assignor kept the deed, and also, the property and titles to the same, in his possession, and before his

McDougald *et al. vs.* Dougherty.

death revoked the deed by destroying it; that there is in the hands of the administratrix of Daniel McDougald, assets amply sufficient to pay complainant's debt; and that there are other solvent persons bound for the same—are matters *in pais*, dependent on the proof; and conceding that the material facts stated in the bill, are flatly denied, neverthless, we should continue the receiver until the final hearing.

Whether the security required of the receiver was sufficient, and Mr. Rutherford a suitable person to fill the office, are matters of discretion; and having no evidence that the power thus entrusted to the Court, has been wantonly or injuriously exercised, we shall not undertake to control his judgment in these particulars.

[3.] It is objected that the whole proceedings, in the appointment of a receiver and the subsequent orders in relation thereto, were irregular. I would remark that these proceedings before a Master, are in the nature of an informal bill in Equity; and supervisory Courts will not interfere, unless substantial errors or defects exist.

[4.] If any great right or public policy has been violated by the Master, relief will be afforded otherwise. Not much is left to the discretion of the Master. We see nothing, in our opinion, which amounts to this, so far as the formal objections taken to the various rulings of the Circuit Judge, sitting as a Master in Chancery, are concerned. He has performed the most arduous services, voluntarily and gratuitously, and for which, as an example, he deserves well of the country.

[5.] This extra-judicial mode of investigation, is of very great advantage, by relieving the Court at its regular terms, from the performance of burthensome duties, and thus enabling it to exercise its regular jurisdiction in a much more beneficial manner. (See *Jeremy's Equity Jurisdiction*, 292, 293.)

[6.] Let us briefly consider, however, some of the more important points of this case. And first, is the tender proven here, sufficient to require the removal of the receiver? Candor compels me to confess that for myself, I have grave doubts upon this question. Had the tender been formally pleaded, which it is not, and which is of itself a good reason for not allowing it,

and had it been made by Mr. Jones, the assignee, or by Mrs. McDougald, as the administratrix of her deceased husband, who owed the debt, and whose estate is liable for its payment, after she had been made, in her representative character, a party defendant to the bill, I should feel constrained, upon principle as well as authority, to compel the plaintiff to accept it, and to arrest his bill till he did. It is not made however, by the party who is the debtor and · defendant in this case. It is made by Mrs. Ann E. McDougald and by Mr. Duncan McDougald, against whom no decree is prayed, and for the payment of Daniel McDougald's debt. Whether the reasoning applies to them, I am not prepared to say; the cases cited certainly do not go so far.

[7.] The reply of the defendant in error, that inasmuch as one creditor could not sue alone, to enforce this trust, that payment to him cannot arrest the suit, is not satisfactory. True, one creditor cannot sue alone, to enforce payment of his demand, out of a common trust fund, which has been set apart for himself and others. *Story's Eq. Pl.* §. 157. He must allow others to come in under the decree, and share in the proceeds.

[8.] But this, we apprehend, does not interfere at all, with another equally well established doctrine, that up to the time of the decree, it is a suit only between party and party, and the plaintiff is *dominus litis,* or master of his own case. He may dismiss or compromise it, or make any other disposition of it which he sees fit; and as a correlative right to this, the defendant may tender satisfaction, and compel him to accept it.

The tender, I repeat, not having been formally pleaded, and not having been made by the debtor party, we will leave this principle undisturbed for the present.

[9.] As to the several orders which were passed, requiring Ann E. McDougald and Duncan McDougald to deliver up to the receiver the property in their possession, because it was contained in the deed of assignment, we are clear, that no Judge in this State, sitting either as Master or Chancellor, possesses such power.

[10.] This property was held by third persons, who claimed

adversely to the deed of trust, and who, by their answers, attacked the validity of that instrument.    A Chancellor in England would hardly venture to decide upon such a disputed title, without the aid of a Jury.    It is conformable, I know, with the practice of the British Chancery, and is considered there peculiarly proper, when titles are disputed, especially in relation to land, to desire an inquisition by a Jury.    And Mr. *Maddock*, (in his *Chancery*, 2 *vol. p.* 276,) says, that " In all doubtful cases, the Court *will* direct an issue, in order to relieve its own conscience, and to be satisfied by the verdict of the Jury, of the truth or falsehood of the facts controverted, lest taking it upon itself to pronounce decidedly, a matter of such uncertainty, it might do injustice to one of the parties, by determining against the real truth of the fact."

If a Chancellor in England would not undertake to decide upon antagonist facts and deductions, but would summon a Jury to his aid, much less will a Master in Chancery, in this State, claim to exercise this right without the aid of an inquisition.

[11.] *Their* province is, and by far the most extensive branch of their cognizance, to investigate accounts ; to make sale of property under a decree in Equity ; and for the purpose of facilitating their inquiries, and rendering them more effectual, they are often empowered to examine witnesses, or even parties to the cause.    In England, they are often called upon to *examine* titles to estates, and to settle conveyances. But even the business of *examination merely*, is rarely confided to the Master here, much less the power of *passing* upon them.

And this view applies to all the property in the hands of Duncan McDougald.    For even as it respects *Peter*, the negro that he purchased of Daniel McDougald, in 1847, the year after the assignment was made, controverting as he does, the legality of that deed of trust, this slave should not be wrested from him, except by due course of law.    Admitting that the conveyance is valid, it may be well doubted how far the title of a *bona fide* purchaser from Daniel McDougald, who was in possession of the property when he sold, would not be protected, and the

transfer made two years before any creditor had signified his acceptance of the trust.

As to the wharf lots, they stand upon a different footing. Duncan McDougald sets up no title to them. To the extent, however, that the order directed peremptorily Duncan McDougald to account to the receiver, and for a specified amount, we think it was wrong. He leased these lots of a Company, of which the deceased was a member; and consequently, the receiver in this, as in all other respects, is remitted to the rights which the assignor held in this, and all other property embraced in the deed; and he must assert these rights according to law.

As to Mrs. Ann E. McDougald, she too contests the validity of this assignment. Her husband died intestate with the property which she holds in his possession. Notwithstanding the deed had been executed more than four years previously, she administered on his estate, took possession of it, and had it inventoried. She has given bond and security for its safe keeping and faithful administration; and under these circumstances, until the title is litigated and settled by a decree, we do not think that she ought to be ousted or dispossessed in this summary mode.

If the receiver conceives that any portion of the property in dispute, is in danger of being eloigned, or otherwise wasted or mismanaged, he has all the remedies at his command, both at Law and in Equity, to prevent any detriment to the creditors.

As to the money collected by Mrs. McDougald of Dr. Tomlinson Fort, on the debt which is set forth in the deed of assignment, even if that conveyance is established—if it has been duly administered by being paid to a judgment in favor of the Mechanics' Bank, one of the oldest, if not the oldest, against Daniel McDougald, and with which the trust would be charged, the Jury upon proof of these facts, would on the hearing of the bill, allow her this credit, or subrogate her to the rights of the creditor for this sum.

[12.] A question of practice, as to the mode of interrogating parties by the Master in Chancery, is urged upon the

McDougald *et al. vs.* Dougherty.

consideration and determination of this Court. Its settlement, the one way or the other, can in no wise affect or change the result in this case. The question is, shall a party to a suit, when examined by the Master in Chancery, be interrogated *viva voce,* or shall interrogatories be filed in writing, to which he shall make answer.

[13.] In England, we believe that *witnesses* are sometimes examined *viva voce.* (*Smith's Ch. Pr.* 147, 148.) And if parties submit to a *viva voce* examaination, it would not vitiate the proceeding. Indeed, for ourselves, we believe that in the case either of witnesses or parties, that the *viva voce* mode is unquestionably the better practice, in order to search the conscience and extract the truth. We believe, however, that in case of *parties,* the regular course is for counsel to prepare written interrogatories, which are submitted to the Master for his approval ; and when approved, are handed over to the party to be examined who being allowed a reasonable time, returns his answer to the same. *Smith's Ch. Pr. from* 122 *to* 125, *and the authorities there cited.* If additional interrogatories are deemed essential, they are to be prepared and executed in the same manner.

The party has a right to demand this, and it is a right of which he cannot be deprived, against his will.

Interrogatories to the parties are provided for the same purpose, as are interrogatories in a bill. They are substituted for the latter as a more convenient mode, to extract the truth from the conscience of the defendant. And as the party interrogated by the bill, is never required to submit to an oral examination, neither should he be, before the Master. It is unnecessary to enlarge upon this rule.

Thirteen interrogatories were propounded to Duncan McDougald. Defendant's solicitors demurred to, or objected, as the bill of exception states, to the defendant, Duncan McDougald's answering *any* or *either* of said interrogatories, on ten grounds, which are stated.

[14.] To elucidate the folly under our improved and enlightened Judiciary, of sticking in mere matters of form, for which I profess to have no taste whatever, I would state, that if

this exception is to be decided on the *form,* then it is certainly not well taken. For the rule is, that if one general exception is taken to the Master's certificate, approving of *all* the interrogatories, the party excepting will succeed, if he shows that the Master was wrong in allowing any *rule ;* but if the exception is because the Master ought not to have allowed *any,* then if any *one* was proper to be allowed, the general exception fails as to all; and the Vice Chancellor, in *Moore vs. Lankford and wife,* (6 *Simons,* 323,) said that the distinction was so obvious, that he could not conceive that any person could have any doubt upon the subject. *Ac etiam, Pearson vs. Knapp, T. M. and K.* 312. *Kothun vs. Best,* 1 *Beavan,* 380. *Hopkinson vs. Bogster,* 1 *G. C.* 13.

Now while we might grant that a portion of these interrogatories were objectionable ; yet we are clear, that there were others which were right and proper to be answered. The exception, consequently, must fail as to the whole.

[15.] At the May Term, 1852, of the Court, the complainant was allowed to amend his bill, by making Edward Carey, assignee, John Banks and others, parties complainants, and Ann E. McDougald as administratrix, a defendant; and other alterations were made to correspond with this change of parties. It was further ordered at the same time, that Ann E. McDougald, as such administratrix, be served with a copy of said bill as amended, at least sixty days before the next term of the Court; and that she plead, answer or demur, to such bill as amended, not demurring alone, on or before the first day of said next term ; that the other defendants be served with a copy of the amendment, sixty days before the next term of the Court ; the complainant expressly waiving the answer of the other defendants, to said amendment to said bill.

In the first place, was it allowable to make this amendment ? With respect to this point, there can be no doubt. New parties may be introduced upon the record, either as plaintiffs or defendants. It is a familiar practice to allow a creditor, suing for his own private debt only, to amend his bill at the hearing, by converting it into a bill on behalf of himself and all other creditors.

*Milligan vs. Mitchell,* 1 *Mylne and Craig,* 433. *Hichens vs. Congreve,* 4 *Russell,* 592. In *Attorney General vs. Newcombe,* (14 *Ves.* 1,) Lord *Eldon* said, he should allow an informality in the bill in not stating that the plaintiffs sued on behalf of themselves and all others interested, to be amended even at the hearing. And it seems that whether the parties introduced on the record are made plaintiffs or defendants, is utterly immaterial; the only restriction being, that a plaintiff who amends under such considerations, shall not be permitted to make a different case. No new case is made in this record; it is still the creditors of McDougald, seeking to enforce the execution of the trust made for their benefit; and the only new matter introduced in the amendment, consists of allegations and charges explaining the claims of the new plaintiffs. As it respects the addition of Mrs. McDougald as administratrix, as a party defendant, we think it was entirely proper that she should be brought in. The protection of her intestate's estate, who is the debtor, made this amendment almost as desirable to her, as it was made indispensable to the plaintiff. But this being a sworn bill, we are of the opinion that the Court erred in allowing the complainant to make a material amendment, not verified either by the affidavit of the orriginal or the new parties.

It may not be absolutely necessary to decide whether or not the time given to Mrs. McDougald, was sufficient; situated as this case was, under the amendment. She was introduced for the first time, upon the record, as a party defendant, and that too, in her representative character; and she was required to plead, answer, or demur, at the next Term of the Court, after being served with the amendment. The amendment consisted of making numerous other creditors of her deceased husband plaintiffs to the bill; and their various demands were inserted, and she required to answer them.

[17.] Every amendment is an indulgence given by the Court, and is granted to the mistakes of the parties and with a view to save expenses.

[18.] But when this indulgence is allowed, the Courts should

see to it, that it is done upon such terms as that injury may not arise to others, who are not in default.

[19.] And if the new matter brought into the bill by way of amendment will affect either the parties to it or strangers, it should not have relation back to the time of filing the original bill; but the suit will be considered as pending, only from the time of the amendment. *Story's Eq. Pl.* §. 904.

For myself, I must say that a fair and liberal indulgence to prepare her defence, was not extended to this defendant, who was an innocent party.

[20.] The only other matters to be noticed, is the protest of Seaborn Jones, against signing the draft of the deed to Rutherford, the receiver. After specifying the property contained in the original assignment from McDougald to Jones, the copy continued thus : " Now this indenture made this thirteenth day of February, eighteen hundred and fifty-two, between the said Seaborn Jones, as such surviving trustee, of the one part, and the said Adolphus S. Rutherford, as the receiver, of the other part, witnesseth, that the said Seaborn Jones, as such surviving trustee, for and in consideration of the premises, and in obedience to the order of the Court, hath aliened, conveyed and assigned, released and relinquished, and quit claim, and by these presents, doth alien, convey and assign, release and relinquish, unto the said Adolphus S. Rutherford, as such receiver as aforesaid, the aforesaid property and effects, together with all the rights, title, claim to, or interest vested in the said Seaborn, as such trustee, by *virtue of said deed of the said Daniel McDougald, &c.*"

Jones objected to executing the deed in the form as above set forth, and asked that he might be allowed to insert in said deed, " that though signing the same, he, said Jones, protests that he does not thereby admit that said alleged deed of trust is, or ever was, valid or binding in any way upon him ; or thereby admits that the recitals contained in said proffered draft of a deed, or the recitals contained in the orders stated in said draft deed to be true." He further objected to executing the same as presented, because " he is thereby made to convey away certain pieces of property which are his own, namely : Lot No. 173, in

said City of Columbus, commonly called the Shylock Corner ; and also lot No. 184, in the same city, which he claims adversely to said alleged trust deed, and because no reservation or provision is made in said deed, for the protection of the said Jones, in reference to his right or claim to said lots."

The Judge overruled these objections, and refused to allow Jones to insert his protest ; and also, overruled his objection to executing the same, on other grounds, and required him (Jones) to sign the draft deed as presented.

Our judgment is, that it was wholly unnecessary for Mr. Jones to make this protest ; that he conveyed away no rights or interest, except such as were vested in him *as trustee,* by virtue of the deed of assignment from Daniel McDougald; that he could not be prejudiced by any recitals in this copy paper, it being executed by him *in invitum,* under the order of the Court.    I have serious doubts, as to the propriety of requiring this transfer to be made.    The appointment of the receiver vested in him the authority to control this property, while his office continued.