Minshaix, J.
On June 16, 1896, the Farmers’ Bank of Wilmot, Ohio, a partnership doing a banking business at that place, obtained a judgment in the court of common pleas of Stark county on a cognovit note, dated June 12, 1896, due one day after, given by Walter S. Putman for |5,139.67, and on the 18th day of the same month, caused an execution to be levied on the property of Walter S. Putman. On the first of July following Putman made an assignment of all his property for the benefit of his creditors, to Charles E. Spiedel,wko accepted the trust and proceeded to administer the same in the probate court.
On the day the note was given Putman was a member of the firm, but ceased on that day to be such, and the persons comprising the partnership after the retirement of Putman were Abraham Grafe, John Longenecker and Timothy C. Putman. No compliance with the statute in regard to the use of fictitious names in partnership, was had until the 21st day of July following, when a new certificate was filed with the clerk of the court, giving the names composing *535 the firm, formed upon the retirement of Putman. Catherine Cobble and others, creditors of Putman, claiming that the judgment rendered on the cognovit note, having been taken after a change had occurred in the membership of the firm and before the new certificate was filed, was without authority of law and created no valid lien on the property, requested Spiedel, assignee, to take the necessary steps to set it aside, that the property might be administered for the equal benefit of all the creditors, and offering to indemnify him by bond should he do so. The assignee refused to act, and thereupon the creditors commenced a suit against him and the members of the partnership, asking to have the judgment and execution set aside and the property administered for the equal benefit of all the creditors under the assignment. By way of defense the defendants relied upon the giving of the note, with the power of attorney attached, the recovery of the judgment, and the release of all errors, contained in the power. And also the compliance with the statute, made July 21, after the judgment had been rendered. The case was taken by appeal to the circuit court where the case was heard on a demurrer to the defenses in the answer. The court overruled the demurrer and dismissed the petition.
The principal questions in the case arise upon the construction of the act passed May 19, 1894, “To prohibit the use of fictitious names in partnership,” and the amendments thereto; and in addition to these, the right of the creditors to maintain the action.
The statute with the amendments affecting the case will be found in Bates’ Annotated Statutes, sections 3107-1 to 7, and reads as follows:
*536 “3170-1. Sec. 1. Except as otherwise provided in the next section, every partnership transacting business in this state under a fictitious name, or a designation not showing the names of the persons interested as partners in such business, must file with the clerk of the court of common pleas of the county in which its principal office or place of business is situated, a certificate to be indexed by said clerk stating the names in -full of all the members of such partnership and their places of residence.”
3170-2. Excepts foreign partnership doing business in this state.
“3170-3. Sec. 3. The certificate filed with the clerk of the court of common pleas provided in section 1 of this act, must be signed by the partners and acknowledged by some officer authorized to take acknowledgments of conveyances of real estate; except that in case of a joint stock company or a commercial or banking partnership, u’hose capital stock is represented by shares or certificates of stock transferable on the books of the concern and Avhose business is conducted by a board of directors and officers, the president, secretary or cashier of such company or commercial or banking partnership, may sign and acknowledge such certificate, giving therein the names of all the persons interested as partners or shareholders in such company or partnership.”
“3170-1. Sec. 1. On every change of the members of a partnership transacting business in this state under a fictitious name or designation which does not show the names of the persons interested as partners in the business, except in the cases mentioned in section 2 of this act, a new’ certificate must be filed with the clerk of the court of common pleas, as required by this act, on the formation of such partnership; *537 except that in case of a joint stock company or banking partnership, it shall be sufficient, if the certificate-provided for in section 1 of this act, is filed once in each year, on or before the first Monday in April; and for the filing and indexing of each certificate under the provisions of this act, said clerk shall be entitled to charge the partnership filing the same the sum of forty cents.”
3170-5 provides for the registration of the names, of partners.
“3170-6. Bee. 6. That after the passage and approval of this act, any persons doing business as partners contrary to the provisions of this act, shall not. commence nor maintain an action on or on account, of any contracts made, or transactions had in their' partnership name in any court of this state, until they shall have first filed the certificate herein required;, provided, however, that if such partners shall at any time comply with the provisions of this act then such partnership shall have the right to commence an action, or if such action has been commenced to maintain the same on all such partnership contracts and transactions entered into prior as well as after such compliance with this act.”
3170-7. Makes copies competent evidence.
It will be observed that by section 6 of this act “any persons” doing business as partners contrary to the provisions of the act, shall not commence nor maintain an action on any contract made in the partnership name in any court of the state until they shall have first filed the certificate required by it; and, by the first section, the requirement is that partnerships, transacting business in this state, in a fictitious name,, must file with the clerk of the court of common pleas in the county in which the principal place of business. *538 is situated, a certificate stating the names in full of all the members of the partnership; and by section four it is further provided, that on every change of the membership, except as therein provided, a new certificate must be filed, as required by the act. One of the exceptions is, that in the case of a “banking partnership,” it shall be sufficient if the certificate required by the act, be filed once in each year, on or before the first Monday of April. This exception was made by an amendment that took effect April 27, 1896; and if applicable to the Farmers’ Bank of Wilmot, it was under no requirement to file a new certificate, until the first Monday of April, 1897, notwithstanding the change that occurred in its membership on the 12th of July, 1896, and it would have been under no disability to commence an action in its firm name at the time the judgment was taken on the cognovit note. But we think it apparent from the ordinary rules of construction, that the “banking partnership” referred to in this section, and in favor of which the exception is made, is necessarily of the class described in the preceding-section; that is, such as have a capital stock, represented by shares, transferable on the bpoks of the “concern.” The reason of the exception evidently is, that the members of such a partnership will be more or less numerous, and it would be very inconvenient in the transaction of its business, if it were required to file a new certificate every time a member should transfer his stock to a third person. Hence, a partnership of this class, doing a business in a fictitious name, is only required to file annually a certificate at the time named, indicating changes in its membership. No reason is perceived why a banking partnership composed of a few persons, whose stock is not *539 divided into shares and transferred on its hooks as the stock of an incorporated company, should be excepted from the general rule of the statute, that would not apply to a manufacturing, or any other kind, of a partnership. And it seems but reasonable that where the legislature in one section makes an exception in favor of “banking partnerships,” having a capital stock divided into shares transferable on the books of the company, and in an immediately following section, makes another exception in favor of “banking partnerships,” the exception is not to apply generally to all banking partnerships, but to such as are defined in the previous section, unless some reason should appear-why the term adopted in the latter section should not have the same meaning given to it in the previous one; and, as we have said, no such reason appears.
It is averred in the petition and admitted by the ■answer that the capital stock of the Farmers’ Bank of Wilmot was not divided into shares transferable •on the books of the company; it was in fact an ordinary partnership composed of but three persons at the time the note was given and the judgment taken; ■and, therefore, was under a positive disability imposed by the statute to commence an action at the time the judgment was taken on the note. The provisions of the statute rest upon reasons of public policy ; and it would have been the duty of the court, had its attention been called to the facts, to have refused to enter the judgment; and it would have been equally its duty to have set it aside, had a motion been made for that purpose by the maker of the note, notwithstanding the release of all errors contained in the cognovit. It was not in his power to.authorize the commencement of a suit against him in disregard of the *540 provisions of law, particularly where the judgment that might be rendered, would affect the rights of his other creditors. In contemplation of law,the judgment entered was no judgment as there was no party to the suit, in whose favor a valid judgment could be rendered. But as the facts do not appear on the face of the record, it can only be got rid of by a proper-proceeding instituted for that purpose; and the only remaining question is whether the creditors have the right to have the judgment set aside and held for naught in the proceeding commenced by them; and of' this there seems little room for doubt.
In the first place it may be observed that the suit, commenced by the creditors is not a collateral attack on the judgment, but a direct one for the purpose of setting it, and the execution issued thereon, aside, that the property covered by the levy may be administered for the equal benefit of all the creditors of the debtor. It was the duty of the assignee, when requested, to bring this suit, but he refused to do so, which gave to them the clear right upon principle and authority to do so. Spelman v. Freedman, 130 N. Y., 421; Harvey v. McDonnell, 113 N. Y., 526; Goncelier v. Foret, 4 Minn., 13; McDougald v. Dougherty, 11 Ga., 570; Preston v. Spaulding, 120 Ills., 208; Weir v. Tannehill, 2 Yerger, 57. There is no objection under our law to a creditor securing himself or obtaining a preference; and this he may do by obtaining a judgment on a cognovit note and causing a levy to be made on the property of his debtor. But in every case where a preference is claimed to have been obtained, to be good against other creditors, it must be valid in law. Equity will not assist one creditor-in obtaining a preference over another. A preferential creditor must stand strictly upon his rights at. *541 law. If it be by mortgage or by conveyance, in either ■case the instrument must' be a valid one in law; and so, if it be by the levy of an execution under a judgment rendered upon a cognovit note, the judgment must be a valid one, open to no legal objections,, for if it might be set aside in a direct proceeding for that purpose by the debtor, it may be set aside by his assignee for the benefit of creditors; and if the latter refuse, then any of the creditors may on behalf of themselves and all other creditors, institute a suit for the purpose.
The compliance with the statute made after the rendition of the judgment did not validate it. The ■compliance, by the express provision of the statute, should have preceded the judgment.

Judgment reversed, and judgment for the plaintiffs heloio.