### RUMBLE *et al.,* receivers, etc., *v.* TYUS *et al.*

A bank was placed in the hands of a receiver. Pending the receivership proceeding the bank filed a motion alleging that it was solvent and able to pay all of its creditors, set forth a scheme under which it claimed that it could be reorganized to the advantage of its creditors, and prayed that its assets be surrendered to it for this purpose. Certain of its creditors and depositors agreed in writing to the alleged reorganization scheme, and pledged themselves to aid in securing a dismissal of the receivership proceeding. The motion was granted and the assets of the bank turned over to it, upon which it proceeded to do business under a different name but under the old charter. The scheme failed, and the bank again made an assignment. Upon the petition of some of its creditors it was again placed in the hands of a receiver. Its assets are not sufficient to pay all of its creditors. *Held,* that, under the facts appearing in the record, in the distribution of such assets depositors who were not parties to the agreement and the application for a surrender of the assets under the first receivership are entitled to priority over those who were.

Argued May 17, — Decided June 15, 1905.

Intervention.    Before Judge Russell.    Pike superior court. October 3, 1904.

The Barnesville Savings Bank, upon the petition of Rogers and others as creditors, was placed in the hands of a receiver. While this case was pending, the Savings Bank filed an application in the superior court, in which the following allegations were in substance made: Since the bank was placed in the hands of a

receiver the bank has become solvent and able to pay its debts. The bank has perfected plans for a reorganization and its capital stock has been subscribed for anew by solvent persons, and the bank will be reorganized under its present charter as soon as the receiver is discharged. A list of subscribers and the amounts of their subscriptions were set forth. As soon as the bank is reorganized, debts due it, amounting to $69,000, will be paid to it. The depositors in the bank have agreed to take $20,000 of the preferred stock of the Barnesville Manufacturing Company, a corporation which was a debtor to the bank in a large amount, as a credit on their respective deposits. Unless the bank is re-organized the debts due it above referred to will be lost. All of the depositors in the bank, except a few whose deposits amount to about $6,000, have signed an agreement, by which they agree to accept preferred stock as above indicated as a credit on their deposits, and then to take ten per cent. of their deposits in cash, and the remainder in two equal payments. The bank tenders a bond in the sum of $50,000, conditioned to pay the depositors the amount of their deposits in accordance with such agreement. The bank has arranged to discharge all other debts due other persons. It is to the best interests of all parties concerned that the receiver be discharged by the court and the bank turned over to its stockholders, so that it can be reorganized; for in this way the debts due the bank will be paid, a new capital stock will be paid in, and a bond in the sum of $50,000 given for the protection of the depositors who are parties to the agreement; whereas if the reorganization is not allowed to take place, the creditors of the bank will probably not receive more than twenty cents on the dollar. The prayer was that the receiver be discharged and ordered to turn over to the bank and its stockholders all its assets and effects in his hands. The agreement referred to in the application was exhibited to the court. In it certain depositors, through their representatives, agreed to the reorganization scheme set forth in the application of the bank, and pledged their efforts to secure a dismissal of the receivership proceedings as well as of a similar proceeding against the Barnesville Manufacturing Company in the Federal court, upon condition that the bank would give bond as set forth in the application. Upon consideration of the application and agreement, the court passed an

order, reciting that, "after hearing evidence and argument upon the foregoing motion, and considering the agreement of the depositors and creditors of said bank," it is ordered, "upon consent of all parties, that the motion be sustained, the receiver discharged, the case dismissed, and the assets and effects of the bank surrendered to it." Thereafter the bank received its assets and effects, undertook to put in operation the scheme set forth in its motion, and proceeded to do business under the name of the Peoples Bank of Barnesville, the charter having been amended as to the corporate name. The charter was subsequently amended so as to change the liability of the stockholders. The scheme failed, the bank made an assignment, and a second application for receiver was made by certain of the creditors of the bank. In this proceeding W. G. Tyus and W. M. Rice & Son intervened and asked to be made parties. They alleged that they were depositors of the Barnesville Savings Bank, set forth the facts in reference to the management of the bank's affairs and the receivership above set forth, averred that they were not parties to the application for a surrender of the assets of the bank under the original receivership, that they were not among the creditors of the bank who consented to that scheme, that the receivers had in their possession sufficient assets of the bank to pay the intervenors' demands in full, and prayed that in the distribution of those assets they be allowed priority over those creditors who consented to the alleged scheme of reorganization. The receivers demurred to and answered the intervention. The court overruled the demurrer; and, the case having been submitted to the judge without the intervention of a jury, he granted an order requiring the receivers to pay in full the demands of the intervenors before payment was made to other creditors who were parties to the agreement above set forth. It appeared from the evidence, that the intervenors were not parties in any way to the scheme of the bank or to the motion under which its assets were surrendered to it, that the averment in the motion that the bank was solvent and able to pay its creditors was untrue, and that there was in the hands of the receivers a sufficient amount of the assets of the bank to pay the claims of the intervenors, though not enough to pay all the other creditors of the bank. The receivers excepted to the orders overruling the demurrer and

requiring them to pay the claims of the intervenors. The contest is between depositors of the bank who did not consent to the alleged reorganization scheme of the bank and creditors who were instrumental in securing an order releasing to the bank its assets.

*W. W. Lambdin* and *J. F. Redding,* for plaintiffs in error.
*R. L. Berner,* contra.

COBB, J. The assets of the Barnesville Savings Bank were placed in the hands of a receiver under an equitable petition filed by some of its creditors. A copy of the petition is not in the record, but it is to be inferred that it was an equitable petition in the nature of a creditor's bill, filed in behalf of all the creditors of the bank, and especially in behalf of depositors. While this case was pending and the receiver was proceeding to gather in the assets and wind up the affairs of the bank, it filed an application to the court, asking that its assets be returned to it, so that they might be used and appropriated in furtherance of a scheme to rehabilitate the bank, which is set forth in the motion. It was distinctly averred in the motion that there were depositors, whose claims aggregated $6,000, who had not consented to the scheme proposed; and it was also stated in emphatic terms that at the time the motion was filed the bank was solvent. Upon this representation the court permitted the bank to take possession of its assets and use them for the purpose stated in the motion. It is inconceivable that the judge would have for a moment entertained the application except for the unequivocal statement that the bank was solvent; which could convey no other idea to the mind of any one to whom the representation was made than that the bank was able to meet all demands of every creditor, and was in a position where the rights of creditors would not at all be imperiled by the court releasing the assets from its custody. It is hardly necessary to state that under no circumstances would a judge of the superior court have granted such an application to embark the assets of an insolvent bank into the uncertain scheme set forth in the application, except for the positive statement that the bank was in a position where the rights of its creditors would not be imperiled if its assets were placed in its hands. It does not appear that the plaintiffs in the intervention were parties to the original receivership proceeding.

Even in a creditor's bill filed in behalf of all the creditors of an insolvent the suit is between the actual parties thereto, and the actual plaintiffs have control of the case and may dismiss it at any time, or the defendant may make satisfaction to them and compel a dismissal. *McDougald* v. *Dougherty*, 11 *Ga.* 570 (7, 8); *Stinson* v. *Williams*, 35 *Ga.* 172. Any one interested in such a suit, not a party thereto, must come in and be made a party, before it is necessary that he should be consulted as to a dismissal of the case; but when in such a case the extraordinary powers of the court have been invoked, the assets of the insolvent seized by the court, and as a result an equitable lien attaches to the property in the custody of the court in favor of every creditor who sees fit to come in before decree, or even under some circumstances after decree, and claim his portion of such fund, while the plaintiffs have power to retire as litigants and therefore dismiss the case so far as their rights are concerned, the question as to what shall be done with the assets in the hands of the receiver is one addressed to the sound discretion of the judge, who may, on his own motion, give the matter such direction as the principles of equity require, either by imposing conditions in behalf of those interested in the fund although not parties, or by holding possession of the fund for a reasonable time to allow others to come in and assert their rights. The judge evidently thought that the rights of all persons interested in the assets were fully protected, or, as said above, the order would never have been granted. The scheme of the bank was a failure. It now appears that the bank was not solvent, that it not only was not in a position where it could pay all the depositors, but was not even in a position where it could pay those depositors who consented to the use of the assets for the purpose of carrying out the scheme of rehabilitation. The failure of the scheme was followed by an assignment, and the assignment was followed by a second petition in the nature of a creditor's bill. What is left of the assets of the bank is again in the custody of a court of equity; and those depositors who did not consent to the scheme, which was allowed a trial simply because of the misinformation which the court had as to the condition of the bank, now come into court and ask that their rights be protected as against the bank

and those depositors who saw fit to enter into what now appears to have been a visionary scheme to place the bank upon a firm footing. Those who have appealed to the court of equity in the present proceeding are depositors who entered with the bank into the scheme proposed in the motion which resulted in the assets of the bank being restored to it. It would seem there could be no question that in equity those depositors who had refused to consent to the scheme were entitled at least to be placed in the position where they were before the assets of the bank were turned over to it. Certainly they have this equity against those for whose benefit the assets of the bank have been used, and this equity must be accorded by those persons before they will be entitled to any of the equitable remedies which they invoke.

But it may be said that it is impossible now to determine what amount would have been received by the non-assenting depositors under a final decree in the original case. This is undoubtedly true. But whose fault is it that the court can not now restore the status as it existed at the time the assets were released to the bank? It is certainly not the fault of the intervenors; for they have taken no part in the management of the bank's affairs, nor have they directly or indirectly caused any of them to be handled for their benefit. These assets, which are admitted to have been of large amount, have become commingled with other assets, and some have been entirely lost, though it is admitted that there is in the hands of the present receivers a sufficient amount of the original assets of the bank to more than discharge the claims of the intervenors. How much these intervenors would have received under a decree in the original case will never be known, but the reason that it can not be known is due entirely to the bank and those who consented for it to enter into the scheme above referred to. Loss must fall on some one. Shall it fall upon those who are not in any way responsible for the misleading statement which caused the judge to release the hold of the court upon the assets of the bank? Or shall it fall upon those who made the misleading statement and those who have consented that the bank should use the assets thus obtained for their benefit? It seems to us there can be but one answer to this question. The loss should fall upon those who sought

to benefit themselves by a proceeding which would never have been allowed but for the misleading statements; and this would be true even though they were not directly responsible for the statement and even though they might have believed that it was true, it being now demonstrated that it was not true, and the officers of the bank, through whose conduct they hoped to be benefited, could certainly have ascertained the exact truth before the statement was made to the court. The case is indeed peculiar and exceptional, but it seems to be one where those who have been guilty of wrong-doing should not be permitted to be heard in regard to equities which they might have against others in reference to the assets now in the hands of the receiver, until they have allowed whatever equity and good conscience would require should be accorded to those creditors interested in the fund of the insolvent bank who were not parties to the misleading statement upon which the court acted, nor responsible for the condition of affairs which has brought about a tolling of the fund resulting from an assignment and a second receivership. If the court had been allowed to administer the fund under the first receivership, all creditors would have been paid pari passu and each would have been compelled to receive his pro rata without a murmur; and if it could be ascertained what would have been that pro rata, it may be that all would still be required to receive it. But certainly the creditors who took no part in the application to have the funds released by the court or in the subsequent transactions should not be charged with any expenses or losses incident to the management of the bank under the scheme, or the assignment, or the second receivership; and as the inability of the court now to find out what was the true interest of these non-assenting creditors in reference to the fund is due to the fault of those who are now clamoring for equitable relief, they will be allowed whatever equitable relief they may be entitled to as against those who have wronged them, provided they are willing to do full equity under the circumstances to those whom they have wronged. Under all of the circumstances of the case the only proper judgment that could have been rendered was that which required these non-assenting creditors who are now complaining to be paid in full their demands, allowing the court to distribute the balance of the fund for the benefit of those who

were the victims of the unfortunate scheme which was made possible by a misrepresentation of a material fact at the time their representatives took charge of the assets of the bank.

The additional record which the judge caused to be transmitted to this court was necessary in order to put the court in full possession of the case in all of its details; and therefore the motion to tax the costs of this additional record against the defendant in error will not be granted.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*